[Circuit Court of Wood County.]

A. J. STEEL V. JACOB KATZENMEYER ET AL.

Decided, April Term, 1903.

*Judgment Liens—Priority of—Effect of Dormancy of—In County Where Judgment was Rendered—And to Which It Had Been Extended by Issuing a Foreign Execution—Effect of Issuing a Second Foreign Execution—Need not be Entered on the Foreign Execution Docket—Duty of Purchaser to Search the Record of Latter County.*

1. The satisfaction or dormancy of a judgment are the only contingencies under which a judgment lien created under favor of Section 5375, Revised Statutes, ceases to exist against the real estate of the debtor. The effect of such satisfaction or dormancy is to relieve the land of the judgment debtor, both in the counties wherein the judgment was rendered and in those into which it has been extended by the issuing and levying of a foreign execution.

2. The issuing of a second execution to and placing it in the hands of the sheriff of a county other than that wherein the judgment was

rendered, within five years from the issue and levy of the first
execution, will prevent the judgment from becoming dormant as
a lien against the real estate of the judgment debtor in such
county. Whether issuing the execution to the sheriff of the
county wherein the judgment was rendered, and having it there
returned, instead of to the sheriff of the county wherein the land
was situate, would keep the lien alive—*Quaere.*

3. There is no statutory requirement that an entry be made upon the
foreign execution docket of the issuing of a second or subsequent
execution from the county wherein the judgment was rendered;
and when the record shows that a judgment lien has been ac-
quired, the duty devolves upon a prospective purchaser to search
the record of the latter county, and ascertain whether the lien
has been kept alive or is dormant.

PARKER, J. (orally); HAYNES, J., and HULL, J., concur.

Error to the Court of Common Pleas of Wood County, Ohio.

This case comes to this court on appeal. One of the defend-
ants is the First National Bank of North Baltimore, Ohio. The
proceeding is to marshal liens, and the controversy is about the
priority of liens. The First National Bank obtained a judg-
ment in the Court of Common Pleas of Hancock County, Ohio,
against the defendant, Jacob Katzenmeyer, on March 31, 1896,
and forthwith caused an execution to be issued upon the judg-
ment to the sheriff of Hancock county, and which execution
was immediatey thereafter received by the sheriff of Wood
county and levied by him upon certain lands owned by said
Jacob Katzenmeyer in Wood county, and the execution was
duly returned.

On November 27, 1901, the plaintff, A. J. Steel, obtained a
judgment in the court of common pleas of Wood county against
Jacob Katzenmeyer, and caused an execution to be issued and
levied upon this same real estate. The defendant, L. D. Lang-
made, also obtained a judgment in the Court of Common Pleas
of Wood County on December 11, 1901; an execution was issued
upon the judgment and a levy was made upon this land. The
defendant, Michael Auverter, took from Jacob Katzenmeyer a
mortgage on this land on July 3, 1896, and this mortgage was
duly filed  for record, and recorded in Wood county, Ohio.
Walding, Kinan & Marvin also obtained a judgment in the

Court of Common Pleas of Wood County 'upon April 30, 1900, against the defendant, Katzenmeyer.

It will be observed that one of these judgments was obtained and the mortgage was taken before five years had expired from the time of the taking of the judgment in favor of the First National Bank of North Baltimore, Ohio, and the levying of the execution issued thereon, and two of the judgments were taken after the expiration of the five years. It is urged as against the levy for the bank, which, if it has been kept alive, is the first and best lien, that its priority has been lost by reason of the fact that an execution was not issued upon the Hancock county judgment within the five years succeeding the first levy, and levied upon this land, it being insisted that that was necessary to keep the judgment alive. This statement of fact is denied by the First National Bank. It insists that it caused an execution to be issued on March 14, 1901, to the sheriff of Wood county, which was by said sheriff levied upon this land upon March 15, 1901, although it was not returned to the clerk of the court of Hancock county until July 11, 1902. About this dispute there is some confusion in the evidence, but we have arrived at a conclusion upon the law which makes it unnecessary for us to determine this issue of fact. It is clear that the first execution upon the judgment in favor of the First National Bank was promptly issued and levied upon this land; that another execution was issued upon March 14, 1901, and that it came into the hands of the sheriff of Wood county; and we find that the receipt of the second execution was duly endorsed upon the foreign execution docket, but we are in doubt about when the levy of that execution was made, i. e., when the endorsement of a levy was entered thereon.

Now we are of the opinion that sufficient was done to keep alive the judgment lien in favor of the First National Bank of North Baltimore, and that therefore said bank has preserved and still holds its first lien upon this property.

The statute bearing upon this subject, Section 1212, R. S., provides for the keeping by the sheriff of each county of a "foreign execution docket," for the entries to be made therein by the sheriff, and the effect of such entries, to-wit:

"And such entries so made, shall be notice to subsequent purchasers and creditors of the matters contained therein."

Section 5375 of the Revised Statutes provides that:

"Lands and tenements, within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered; but judgments by confession, and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered; and all other lands   *   *   *   shall be bound from the time they are seized in execution."

There is no provision that the effect of this seizure shall cease at any future time, or that the lands shall cease to be bound, though it is reasonable, and has been decided, that if the judgment becomes dormant the lien ceases to be operative; and, as we understand it, the satisfaction or dormancy of the judgment are the only ways by which, or contingencies upon which, the judgment ceases to operate as a lien.

Section 5380, Revised Statutes, provides when and how a judgment may become dormant, and impliedly how dormancy may be prevented, as follows:

"If execution on a judgment rendered in any court of record in this state, or a transcript of which has been filed as provided in Section 5377, be not sued out within five years from the date of the judgment, or if five years intervene between the date of the last execution issued on such judgment and the time of suing out another execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor."

Such dormancy would affect the lien of the judgment upon lands in the county where the judgment was entered as well as the lien upon lands in another county to which it has been extended by the issuing and levying of an execution; but in this case, as I have indicated, the second execution was issued within five years from the issuing of the first execution. Five years were not allowed to elapse without the issuing of an execution. It is contended that the issuing of an execution

within the purview of the statute, consists in having the execution go out of the clerk's office into the hands of the sheriff and the making of a levy by the sheriff, but we think that is not the true rule. In the case of *Kelly* v. *Vincent,* 8 Ohio St., page 416, it is held that:

"Taking a writ of execution from the clerk's office, by the judgment creditor or his attorney, and returning the same to the clerk, without delivery to the sheriff, is not suing out an execution within the meaning of Section 101 of the statute of March 8, 1831, so as to prevent the judgment becoming dormant. The suing out execution expressed by the statute requires an actual or constructive delivery of the writ to the sheriff."

We think that a fair construction of the statute on this question leads to the conclusion that all that is required is the placing of the writ in the hands of the sheriff. The cases, *Coal Co.* v. *Bank,* 55 O. S., 233, and *Mason* v. *Hull,* 55 O. S., 256, we have considered in arriving at this conclusion, and which we think sustain our view of the statute. We will not take time to read from them at this time, but simply call attention to them.

It is urged that a great deal of inconvenience may result from holding this way; that a person examining the foreign execution docket would be required to go back in the chain of title and find out whether any foreign execution had ever been levied upon the lands, the title to which he is examining, during the time they were owned by the person against whom the foreign execution was issued, and no matter how far back in the history of the title he might find such a foreign execution issued and levied upon the land, he must then go to the county where the judgment was entered and ascertain whether the judgment had been kept alive so that he may know whether the lien is still in force. It is insisted that it would be more reasonable to hold that there must be a fresh levy every five years, or at least there must be something upon the foreign execution docket indicating that there had been an execution issued within the five years; but we are of a different opinion; we think the statute does not require it, and it is not unreasonable to require the search of the record which

it is said would be required. When it is shown by the record that a lien upon the land has been acquired, it devolves upon the person buying the land to ascertain whether that lien has been kept alive or lost.

In this instance the second execution was issued to the sheriff in this county, and the fact that an execution was received, was entered upon the foreign execution docket. Our view is that that is not required, and the judgment might be kept alive by simply issuing an execution to the sheriff of Hancock county, and having it there returned; though it is not necessary to decide that point in this case.

We hold that the lien first acquired by the First National Bank has been preserved and kept alive, and the decree will be accordingly.

*Fries & Painter,* for plaintiff.

*Baldwin & Harrington, J. E. Schatzel,* for defendants.